## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

**MAGEE BENEVOLENT ASSOCIATION D/B/A MGH**          **CHAPTER 11**
          **Debtor**                                 **CASE NO. 18-03283**

### EMERGENCY MOTION FOR AUTHORITY TO USE
### CASH COLLATERAL AND FOR OTHER RELIEF

COMES NOW Magee Benevolent Association d/b/a MGH ("Movant" or "Debtor") and files this its Emergency Motion for Authority to Use Cash Collateral and for Other Relief (the "Motion"), and in support thereof would respectfully show as follows, to-wit:

### Introduction

1.       On August 24, 2018 (the "Petition Date"), the Movant filed with this Court its Voluntary Petition (the "Petition") for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").  The Movant is the Debtor and Debtor-in-Possession in this Chapter 11 case, and it remains in possession of his assets and properties as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

### Jurisdiction and Venue

2.       This Honorable Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§ 157 and 1334; 11 U.S.C. §§ 105, 363, 541, 1107, related statutes, related rules and various orders of reference.  This is a core proceeding.

### Background

3.       Magee Benevolent Association d/b/a MGH ("Magee General Hospital" or "MGH") is a primary provider of healthcare services in Simpson County, Mississippi owning and operating a 64-bed licensed hospital facility (44 staffed inpatient beds), clinics, a 50% interest in a campus medical office building, and other related ancillary businesses and holdings located in Magee,

Mississippi, and surrounding communities. Magee General Hospital operates as a 501(c)(3) tax exempt organization led by a self-perpetuating community board of directors ("Board of Directors").

    a.    For more than 70 years, Magee General Hospital has been dedicated to charitable healthcare and improving the health and well-being of the citizens of Simpson County and surrounding areas. This mission and vision has been carried out by providing comprehensive health and wellness services through its hospital, clinics and medical staff. Magee General Hospital provides local access to quality emergency and acute care services.

    b.    The current environment for rural hospital providers in Mississippi is difficult. After careful thought and deliberation, the Board of Directors determined that Magee General Hospital will not be able to continue to provide sustainable healthcare services without becoming part of a larger health system, other asset sales and/or filing the Petition in this case for reorganization.

    c.    Prior to the filing of the Petition, Magee General Hospital attempted to market its assets in a thorough manner but was unable to secure a purchaser. Accordingly, in order to restructure its obligations and to remain a viable, essential part of its community and as a major employer, it initiated this case.

    d.    In considering this filing, the goals of the Board of Directors are:

        i.    To secure a commitment to the continued provision of quality healthcare services in Simpson County and the surrounding area;

        ii.    To make every possible effort to pay the debts owed by Magee General Hospital to its lenders;

        iii.    To maintain the high quality physical facilities already in place at Magee General Hospital;

      iv.     To access for Magee General Hospital and the citizens of Simpson County (1) capabilities, (2) leadership, and (3) strategies necessary to cause the Hospital to be well positioned for future success in an era of healthcare reform;

      v.     To secure physician recruiting to support the services offered by Magee General Hospital; and

      vi.     To secure a commitment to transparency in dealing with all of Magee General Hospital's constituencies, including its employees, medical staff, and citizens of the local community.

      e.     Over the last year, the management of Magee General Hospital has been overseen by Trilogy Healthcare Solutions.  As a part of that engagement, Trilogy Healthcare Solutions has (1) revamped and upgraded the revenue cycle functions of the Hospital using best practices in the industry, (2) overseen the Hospital's accounting functions, including the preparation of financial statements for the Board of Directors and (3) replaced the Senior Leadership of the Hospital with an experienced, high-energy chief executive officer. Trilogy also has been engaged by Magee General Hospital to be Magee General Hospital's exclusive agent and representative to assist in affiliating with a qualified healthcare system.  Trilogy will continue to assist in developing and negotiating transactions to foster the continued availability of quality, sustainable healthcare services in Simpson County.

      f.     An experienced and dedicated medical staff led by Charles Pruitt, III, MD, Frank Wade, MD, and John Miller, MD, provides a full range of primary care services.

      g.     In January, Trilogy and the Board of Directors hired Sean Johnson as CEO. Sean is an experienced and dynamic hospital CEO with over 14 years of experience in leading rural

hospital organizations.

h.      The Hospital provides a wide array of services including 24/7 Emergency Care Acute Hospital Services, Surgical Services, General Medicine, Radiology, Laboratory, Family Medicine, Respiratory Therapy and a Swing Bed program. MGH offers extensive physical, occupational and speech therapy services through its relationship with Mid-South Therapy.

i.       The Hospital works closely with local physicians to provide patients with comprehensive medical care close to home. MGH is fully licensed by Mississippi's Department of Health and is certified by the centers of Medicare and Medicaid Services (CMS).

j.       MGH operates four emergency room beds and currently employs ERx as its service provider. In addition to physician coverage provided by ERx, MGH is utilizing tele-emergency during multiple shifts each week as a means for quality, cost-efficient coverage.

k.       Surgical procedures at MGH include general surgery, laparoscopic procedures, gastroenterology, podiatry, plastic surgery and pediatric dentistry. All of these services are provided outpatient with support of certified nurse anesthetists. Patients who require follow up care are scheduled in the various specialty clinics supported by Magee General Hospital.

l.       The radiology department utilizes a digital system that includes an advanced PACS system providing permanent storage of images and reports with two locations of image storage. Images are transmitted via PACS to the RadGroup, based in Jackson, Mississippi, consisting of 15 board certified radiologists trained in CT, ultra sound, nuclear medicine, MRI and mammography. MGH is ACR accredited in mammography, IAC accreditation in CT as well as MRI. Services include diagnostic imaging, CT, MRI, bone density, arterial brachial studies, modified barium swallows, echocardiograms, and vascular studies.

m.       The professional laboratory staff includes MLS certified scientists and MLT

certified technicians who work under the direction of a board certified pathologist. MGH is CLIA certified.

n.    Partnering with Mid-South Rehab based in Ridgeland, Mississippi, MGH provides inpatient and outpatient rehabilitation services.

o.    The respiratory therapy department provides cardiac and respiratory services including pulmonary function tests, holter and loop monitors, breathing treatments and oxygen therapy, arterial blood gas testing, airway management and mechanical ventilation and EKG.

p.    Providing a bridge between house and home, the Hospital's swing bed program is staffed by RNs, LPNs, Physical Therapists, Speech Therapists, Occupational Therapists, Case Managers and Registered Dieticians.

q.    Three primary care physicians based on the MGH campus lead the medical staff and provide the majority of physician services in Magee, Mississippi.  The Hospital also employs one physician assistant and one pediatric nurse practitioner. MGH offers a number of specialty service lines such as an emergency department, sleep lab and wound care. Specialty clinics are accommodated at the Hospital including GI services, general surgeons, podiatrist, cardiologists, orthopedic surgeons an OB/GYN and an audiologist. Physician recruitment is the primary strategic initiative of the Hospital. A health system partner will improve the Hospital's success on this front.

r.    Magee General Hospital has 105 full time employees.  MGH provides a full-range of benefits to eligible employees including medical and dental insurance, life and disability insurance plans, a flexible spending accounts plan and a retirement plan.

s.    MGH sits on approximately 30 acres of land with more than 74,500 square feet (26,000 newly renovated) of hospital space. The Medial Towers of Tuscan Court is a 47,496 square foot medical office building adjacent to the Hospital and serves as the home to three busy

medical practices.

### The Debtor's Secured Debt in Connection with the Use of Cash Collateral

4.     Prior to the filing of the Petition, the Debtor borrowed money from Trustmark National Bank (the "Lender"). The Lender's debt is secured by a deed of trust upon various assets of the Debtor and the Lender may have received liens and security interests in and upon the Debtor's accounts receivable and other items of collateral (the "Collateral").

5.     The Lender does not make cash advances to the Debtor and, accordingly, the Debtor has "operated" from accounts receivable collections for a significant period of time.

### Adequate Protection and Uses of Cash Collateral

6.     Debtor is in urgent need of the use of cash collateral (assuming the cash Debtor receives post-petition is cash collateral of some party or parties) in order to pay its operating expenses, and to provide patient care. Attached hereto as **Exhibit "A"** and incorporated by reference is a fifteen (15) day budget. Attached hereto as **Exhibit "B"** and incorporated by reference is a thirteen (13) week budget. The expense items of the budget represented by Exhibit "A" are for absolutely essential costs to provide patient care and to provide irreparable harm.

7.     The Debtor proposes to provide adequate protection to the Lender by continuing to remain in business, provide adequate patient care, create accounts receivable and collect accounts receivable, and operating in the ordinary course of business. As adequate protection, the Debtor proposes to grant post-petition liens to the Lender upon the same Collateral that it held security interest in before this case was filed. As further adequate protection, for the Lender, to the extent of any diminution of the value of the Collateral from and after the Petition Date for the Debtor's use thereof, the Lender shall receive a replacement first priority perfected security interest pursuant to §361(2) of the Bankruptcy Code in all collateral generated post petition as to which the Lender held

properly perfected liens and security interests on the Petition Date and to the extent that such stay, use, sale, lease or grant result in a decrease of the value of such entity's interest in such property from the Petition Date.

8.      The Debtor believes the value of the Collateral pledged to the Lender exceeds the amount of the Lender's indebtedness.  The Lender's equity cushion in the Collateral also provides the Lender with adequate protection, in the interim, while the Debtor and the Lender negotiate possible post-petition financing.

### Argument and Authorization

9.      The Debtor is unable in the ordinary course of business or otherwise, to obtain unsecured credit allowable pursuant to section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to sections 363 or 364(a) or (b) of the Bankruptcy Code in an amount necessary for the maintenance and preservation of assets and operation of business, or secured indebtedness pursuant to section 364(c) of the Bankruptcy Code.

10.     Good cause exists for the entry of an Order granting the Motion.  Among other things, entry of an Order will minimize the disruption of the winding down of the existing business, will increase the possibility for a higher and better bid to be received from a prospective purchaser, will maintain the value of the Debtor's Collateral, and is in the best interests of the Debtor, its creditors and other parties-in-interest.

11.     The terms of the use of cash collateral outlined herein are for reasonably equivalent value and fair consideration.

12.     A debtor's use of property of the estate is governed by Bankruptcy Code 363. Section 363(c)(1) provides that a debtor-in-possession may use property of the estate in the ordinary course of business without notice or a hearing. 11 U.S.C. § 363(c)(1), Section 363(c)(2), however, permits a debtor in possession to use, sell or lease "cash collateral" under subsection (c)(1) only if the entity with an interest in the cash collateral consents or the Court authorizes such use. 11 U.S.C. § 363(c)(2). Debtor has sought consensual use of cash collateral but has not yet received a final response. Whether such use may be authorized by a court depends on whether there is adequate protection of the entity's interest in the cash collateral. Section 361 of the Bankruptcy Code does not provide a definition of adequate protection. However, it is clear that under case law considering adequate protection in similar circumstances, the Lender is adequately protected in this case.

13.     The Bankruptcy Code protects a secured creditor only to the extent that a debtor's use of the collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); *see United Savs. Ass 'n v. Timbers of lnwood Forest Ass'n Ltd.,* 484 U.S. 365, 369-73, 108 S. Ct. 626 (1988) ("Timbers") (Supreme Court holds that the "interest in property" entitled to protection is "the value of the collateral, as of the time of the commencement of the bankruptcy case" that secures such claim). *See also Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources,* Inc.) 54 F.3d 722, 730 (11th' Cir.). *cert. denied* 116 S. Ct. 488 (1995). Here, the interests of the Lender are adequately protected by the agreement to use cash collateral that is only devoted to the needs of the Debtor, maintenance of the status quo with respect to the Collateral and the Lender's equity cushion therein.

14.     In addition, the Lender is adequately protected by the Debtor's maintaining the value of the existing business as much as is possible, which will preserve the value of the collateral securing the claims of the Lender.

15.     The orderly continuation of the business will help to preserve the value of the enterprise and its assets.

16.     Applying the foregoing, courts have often allowed the use of cash collateral where such use would enhance or preserve the debtor's reorganization value. Thus, for example, in *Stein v. United States Farmers Home Administration (In re Stein),* 19 B.R. 458 (Bankr. E.D. Pa. 1982), the court allowed a debtor to use cash collateral where the secured party was unsecured, finding that the use of cash collateral was necessary to the continued operations of the debtor and the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]". *Id.* At 19 B.R. 460; *see also Dynaco,* 162 B.R. at 396 (finding that the alternative to the debtor's use of cash collateral, a forced termination of his business, would doom reorganization and any chance to maximize value for all creditors): *In re Karl A. Neise, Inc.,* 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on post-petition property acquired by debtor; the debtor can use cash collateral "in the normal operation of their business").

17.     If the Debtor is denied the use of cash collateral, in all likelihood it will be forced to make drastic decisions regarding the closing of operations.  Such a cessation, even temporarily, would cause the Debtor significant losses with respect to the value of its assets, and, obviously, adversely impact patient care.  It may also result in a forced liquidation of all of the Debtor's assets, and a consequent loss to creditors of value.  The Debtor's assets (especially its accounts receivable) would be worth substantially less in a forced liquidation setting.

### Notice

18.     Notice of this Motion is being provided to those parties as directed by the Court.

19.     An emergency hearing on this Motion is necessary and essential for the continued operations of the Debtor.  The Court should permit this Motion to go forward on an expedited basis

and shorten notice of such hearing under the Federal Rules of Bankruptcy Procedure. The Debtor submits that such notice would be appropriate and proper under the circumstances and that no further notice would be required.

20.     Other grounds to be assigned upon a hearing hereof.

WHEREFORE, PREMISES CONSIDERED the Debtor respectfully prays that upon a hearing hereof this Honorable Court will enter its order granting, on an interim basis, the Motion and then, upon a final hearing, the Court will enter its order granting the Motion on a final basis. The Debtor prays for general relief.

This, the 24th day of August, 2018.

Respectfully submitted,

MAGEE BENEVOLENT ASSOCIATION D/B/A MGH

By Its Attorneys,

LAW OFFICES OF CRAIG M. GENO, PLLC

By: */s/ Craig M. Geno*
      Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Jarret P. Nichols; MSB No. 99426
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
jnichols@cmgenolaw.com

N:\Firm Data\Users\Bankrupt\Magee General Hosp\Pleadings\Emergency Mot for Authority to Use CC 8-22-18.wpd

-10-

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via U.S. Mail, postage prepaid, email transmission and/or Notice of Electronic Filing, a true and correct copy of the above and foregoing instrument to:

Christopher James Steiskal, Sr., Esq.
Christopher.j.steiskal@usdoj.gov

THIS, the 24th day of August, 2018.

/s/ Craig M. Geno
Craig M. Geno

Magee General Hospital
Cash Projections
As of August 24, 2018

|  |  |
|---|---:|
| Cash on Hand 08.24.18 | $    218,000 |
| Initial 15 day projected cash collections | 470,000 |
| Cash available for operations | 688,000 |

Expenses

| Salaries, Wages, and Benefits (August 31st PR) |  |
|---|---:|
| Payroll | 160,000 |
| Payroll Taxes | 65,000 |
| Retirement | 7,000 |
| Sun Life | 7,000 |
| Aflac | 4,000 |
|  | 243,000 |

| Supplies |  |
|---|---:|
| McKesson | 15,000 |
| US Foods | 5,000 |
| Blood Services | 5,000 |
| Cardinal | 8,000 |
| Misc. Supplies | 6,000 |
|  | 39,000 |

| Drugs |  |
|---|---:|
| Morris Dickson | 12,500 |

| Fees and Purchased Services |  |
|---|---:|
| CPSI | 0 |
| Baxter IV | 2,500 |
| Stericycle | 500 |
| AT&T | 500 |
| Baptist Lab | 10,000 |
| Hub Care Path | 2,000 |
| Bailey Cable | 500 |
| Broadway Linen | 3,000 |
| Wound Care | 11,000 |
| Republic | 2,000 |
| Heartsounds | 3,500 |
| Sleepworks | 11,000 |
| Rad Group | 1,600 |
| UMC Telehealth | 2,500 |
| Erx | 30,000 |
| Hospitalist Coverage | 5,000 |
| Trilogy Healthcare Solutions (CRO) | 15,000 |

EXHIBIT "A"

| | |
|---|---:|
| Trilogy Revenue Cycle Solutions | 16,000 |
| Dietary Manager | 0 |
| Mid-South Rehab (excludes swing bed) | 20,000 |
| Mid-South Medical Imaging | 1,000 |
| Autonomy Rehab | 450 |
| Southern Anesthesia | 6,000 |
| Wade | 0 |
| | **144,050** |

| | |
|---|---:|
| **Admin** | |
| Entergy | 20,000 |
| Worker's Comp | 4,000 |
| Pitney Bowes Postage | 1,000 |
| 3M | 2,900 |
| Medicaid Assessment | 0 |
| DeFatta | 0 |
| Insurance | 20,000 |
| Bank Fees | 1,000 |
| Merchant Fees | 2,000 |
| HCAHPS - J L Morgan | 1,500 |
| Sales Tax | 700 |
| Courier Fuel | 200 |
| Charity Fees | 1,500 |
| Carbon 6 | 0 |
| Internet Adverstising | 300 |
| Horne, LLC - Benefit plan audit, Low Volume Adj validation | 7,500 |
| | **62,600** |

| | |
|---|---:|
| **Rent** | |
| MOB and PLLC | 0 |

| | |
|---|---:|
| **Repairs and Maintenance** | |
| Lawn Maintenance | 1,060 |
| Republic Services | 3,000 |
| Dietary | 500 |
| EVS | 500 |
| Lab | 3,000 |
| Nursing | 3,000 |
| Pharmacy | 1,000 |
| Surgery | 3,000 |
| Technology/CPSI | 15,000 |
| Vehicle Repair and Fuel | 500 |
| | **30,560** |

| | |
|---|---:|
| Total Expenses | 531,710 |

| | | |
|---|---|---:|
| Cash on hand end of initial 15 day period | $ | 156,290 |

Magee General Hospital
Cash Projections
As of August 24, 2018

|  | 30 | 31 | 30 | 91 |
|---|---|---|---|---|
| Subsequent 91 day period | $ 1,125,000 | $ 1,125,000 | $ 1,125,000 | $ 3,375,000 |

**Expenses**

**Salaries, Wages, and Benefits**

|  | | | | |
|---|---|---|---|---|
| Payroll | 320,000 | 320,000 | 320,000 | 960,000 |
| Less changes | | | | |
| Implement auto lunch deduct | (16,667) | (16,667) | (16,667) | (50,000) |
| Giftshop to volunteer staff | (2,083) | (2,083) | (2,083) | (6,250) |
| Eliminate part time dietary position | (1,333) | (1,333) | (1,333) | (4,000) |
| Eliminate LPN position | (2,500) | (2,500) | (2,500) | (7,500) |
| Eliminate Admit/Registration position | (1,667) | (1,667) | (1,667) | (5,000) |
| Eliminate part time case manager | 0 | 0 | 0 | 0 |
| Restructure HR Department | (3,333) | (3,333) | (3,333) | (10,000) |
| Payroll Taxes | 115,000 | 115,000 | 115,000 | 345,000 |
| Savings from staff eliminations | (1,800) | (1,800) | (1,800) | (5,400) |
| Retirement | 14,000 | 14,000 | 14,000 | 42,000 |
| Sun Life | 14,000 | 14,000 | 14,000 | 42,000 |
| Aflac | 8,000 | 8,000 | 8,000 | 24,000 |
| Unemployment | 3,000 | 3,000 | 3,000 | 9,000 |
| EE Insurance | 44,000 | 44,000 | 44,000 | 132,000 |
| | 488,617 | 488,617 | 488,617 | 1,465,850 |

**Supplies**

|  | | | | |
|---|---|---|---|---|
| McKesson | 30,000 | 30,000 | 30,000 | 90,000 |
| US Foods | 5,000 | 5,000 | 5,000 | 15,000 |
| Blood Services | 10,000 | 10,000 | 10,000 | 30,000 |
| Cardinal | 16,000 | 16,000 | 16,000 | 48,000 |
| Misc Supplies | 20,000 | 20,000 | 20,000 | 60,000 |
| | 81,000 | 81,000 | 81,000 | 243,000 |

**Drugs**

|  | | | | |
|---|---|---|---|---|
| Morris Dickson | 25,000 | 25,000 | 25,000 | 75,000 |

**Fees and Purchased Services**

|  | | | | |
|---|---|---|---|---|
| CPSI | 17,000 | 17,000 | 17,000 | 51,000 |
| Baxter IV | 5,000 | 5,000 | 5,000 | 15,000 |
| Stericycle | 1,000 | 1,000 | 1,000 | 3,000 |
| AT&T | 500 | 500 | 500 | 1,500 |
| Baptist Lab | 10,000 | 10,000 | 10,000 | 30,000 |
| Hub Care Path | 2,000 | 2,000 | 2,000 | 6,000 |
| Bailey Cable | 500 | 500 | 500 | 1,500 |
| Broadway Linen | 6,000 | 6,000 | 6,000 | 18,000 |
| Republic | 4,000 | 4,000 | 4,000 | 12,000 |
| Heartsounds | 3,500 | 3,500 | 3,500 | 10,500 |
| Sleepworks | 11,000 | 11,000 | 11,000 | 33,000 |
| Rad Group | 1,600 | 1,600 | 1,600 | 4,800 |
| UMC Telehealth | 5,000 | 5,000 | 5,000 | 15,000 |

EXHIBIT
"B"
tabbies

| | | | | |
|---|---:|---:|---:|---:|
| ERx | 60,000 | 60,000 | 60,000 | 180,000 |
| Hospitalist Coverage | 10,000 | 10,000 | 10,000 | 30,000 |
| CMGeno, PLLC | 20,000 | 15,000 | 15,000 | 50,000 |
| Trilogy Healthcare Solutions (CRO) | 45,000 | 45,000 | 45,000 | 135,000 |
| Trilogy Revenue Cycle Solutions | 32,000 | 32,000 | 32,000 | 96,000 |
| Dietary Manager | 427 | 427 | 427 | 1,281 |
| Mid-South Rehab | 50,000 | 50,000 | 50,000 | 150,000 |
| Mid-South Medical Imaging | 2,500 | 2,500 | 2,500 | 7,500 |
| Autonomy Rehab | 450 | 450 | 450 | 1,350 |
| Southern Anesthesia | 6,000 | 6,000 | 6,000 | 18,000 |
| Wade | 875 | 875 | 875 | 2,625 |
| | 294,352 | 289,352 | 289,352 | 873,056 |
| | | | | |
| **Admin** | | | | |
| Entergy | 20,000 | 20,000 | 20,000 | 60,000 |
| Worker's Comp | 8,000 | 8,000 | 8,000 | 24,000 |
| Pitney Bowes Postage | 1,000 | 1,000 | 1,000 | 3,000 |
| 3M | 2,900 | 2,900 | 2,900 | 8,700 |
| Medicaid Assessment | 60,000 | 60,000 | 60,000 | 180,000 |
| DeFatta | 1,500 | 1,500 | 1,500 | 4,500 |
| Insurance | 24,000 | 24,000 | 24,000 | 72,000 |
| Bank Fees | 1,000 | 1,000 | 1,000 | 3,000 |
| Merchant Fees | 2,500 | 2,500 | 2,500 | 7,500 |
| HCAHPS - J L Morgan | 3,000 | 3,000 | 3,000 | 9,000 |
| Sales Tax | 700 | 700 | 700 | 2,100 |
| Courier Fuel | 200 | 200 | 200 | 600 |
| Charity Fees | 3,000 | 3,000 | 3,000 | 9,000 |
| Carbon6 | 3,500 | 3,500 | 3,500 | 10,500 |
| Wound Care | 11,000 | 11,000 | 11,000 | 33,000 |
| Internet Adverstising | 300 | 300 | 300 | 900 |
| | 142,600 | 142,600 | 142,600 | 427,800 |
| | | | | |
| **Rent** | | | | |
| MOB and PLLC and Leased equipment | 50,664 | 50,664 | 50,664 | 151,992 |
| | | | | |
| **Repairs and Maintenance** | | | | |
| Lawn Maintenance | 1,060 | 1,060 | 1,060 | 3,180 |
| Republic Services | 6,000 | 6,000 | 6,000 | 18,000 |
| Dietary | 1,000 | 1,000 | 1,000 | 3,000 |
| EVS | 1,000 | 1,000 | 1,000 | 3,000 |
| Lab | 6,000 | 6,000 | 6,000 | 18,000 |
| Nursing | 6,000 | 6,000 | 6,000 | 18,000 |
| Pharmacy | 2,000 | 2,000 | 2,000 | 6,000 |
| Surgery | 6,000 | 6,000 | 6,000 | 18,000 |
| Technology/CPSI | 20,000 | 20,000 | 20,000 | 60,000 |
| Vehicle Repair and Fuel | 500 | 500 | 500 | 1,500 |
| | 49,560 | 49,560 | 49,560 | 148,680 |
| | | | | |
| Total cash disbursements | $ 1,131,793 | $ 1,126,793 | $ 1,126,793 | $ 3,385,378 |
| | | | | |
| Monthly cash flow | $ (6,793) | $ (1,793) | $ (1,793) | $ (10,378) |
| Beginning cash balance | 156,290 | 149,497 | 147,705 | 156,290 |
| Ending cash balance | $ 149,497 | $ 147,705 | $ 145,912 | $ 145,912 |

| Cash Flow Including Debt Service Payments | | | | | |
|---|---:|---|---:|---|---:|
| Beginning cash on hand | $ | 156,290 | $ | 92,244 | $ | 12,199 |
| Monthly change in cash | | (6,793) | | (1,793) | | (1,793) |
| Debt service payments | | (57,253) | | (78,253) | | (57,253) |
| Ending cash balance with debt srv pmts | $ | 92,244 | $ | 12,199 | $ | (46,847) |

Debt

|  | | |
|---|---:|---|
| Bond A | 31,851 | due 1st |
| Bond B | 20,081 | due 1st |
| MOB Note | 5,321 | 5th |
|  | 57,253 | |
| Bulger quarterly payment | 21,000 | due jan, apr, jul, oct |
|  | 78,253 | |
| Equipment Leases | | |
| GE Nuclear Camera | 2,816 | |
| Creekridge Capital | 431 | |
| Diagnostic Stago | 930 | |
|  | 4,177 | |