UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:         MAGEE BENEVOLENT ASSOCIATION   CASE NO.   18-03283-KMS

DEBTOR(S)                                         CHAPTER 11

## UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S APPLICATION TO EMPLOY CHIEF RESTRUCTURING OFFICER, CHIEF FINANCIAL OFFICER AND MANAGEMENT SERVICES PROFESSIONALS

COMES NOW David W. Asbach, Acting United States Trustee for Region 5 ("UST"), by and through undersigned counsel, and files this Objection to the Debtor's Application to Employ Chief Restructuring Officer, Chief Financial Officer, and Management Services Professionals (the "CRO Application," DKT. #37), and in support thereof respectfully submits the following:

1. The UST has no intrinsic bias against CROs. In fact, they are routinely appointed in chapter 11 cases throughout the United States, most often without UST objection. The Debtor could have structured the CRO engagement in a way that would not have caused the UST any concern. However, the UST objects to the proposal in this CRO Application because it violates the Bankruptcy Code.

2. In the CRO Application, the Debtor requests to employ Trilogy Healthcare Solutions, Inc. ("Trilogy"), the Debtor's current financial advisor and management consultant, as the Debtor's Chief Restructuring Officer, Chief Financial Officer, financial advisor, and management consultant in these bankruptcy cases.

3. The terms and conditions of Trilogy's proposed employment as the Debtor's CRO are outlined in the CRO Application and the Bankruptcy Restructuring and Management Services

1

Agreement (the "MSA") attached as Exhibit "A" to the CRO Application.

4. In Paragraph #11 of the CRO Application, the Debtor states that "Bill Williams will serve as the CRO of the Debtor and a Trilogy CFO will serve as CFO of the Debtor." Paragraph #11 also states "[t]he CRO and CFO shall exercise operational, management and corporate governance functions previously exercised by the Debtor's Board of Directors (the "Board")." But Paragraph #17 of the CRO Application goes on to state, "[T]hey [Trilogy CRO and CFO] shall continue to serve at the pleasure of the Board with the consent of the Board. The Board shall retain oversight responsibilities in connection with the operation and management of the Debtor."

5. The MSA contradicts the language above. Under Section 1.02, the MSA states, "Upon approval by the Bankruptcy Court, the CRO shall assume responsibility for carrying out the governance functions previously exercised by MGH's Board of Directors (the "Board"); however, the Board will remain in-tact and will serve in an advisory capacity."

6. If the Debtor proposes to have Trilogy's CRO employed with full governing authority over the Debtor, and thus replace the Debtor's Board of Directors, this proposal violates the Bankruptcy Code.[1]

7. The only remedy in the Bankruptcy Code to replace debtor management in a chapter 11 case is the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a). According to *Collier on Bankruptcy*, appointing a person other than a chapter 11 trustee circumvents the Bankruptcy Code:

---

[1] In addition to the clear problem of statutory authority for a party to serve in the role of CRO with unfettered discretion as it appears in this case, a professional already employed who serves in such a role presents the additional problem of sorting out likely duplication of services and which "hat" is being worn for each activity. This is one reason why the UST generally opposes a CRO serving in more than one capacity in a particular case.

> It is really unnecessary to misinterpret the Code and look for a way to circumvent its provisions. In an appropriate case, section 1104 can be utilized to provide the proper persons to run the business and assist in the reorganization. When a court finds that management should be replaced, that should be sufficient cause under section 1104(a)(1) to order the appointment of a trustee.

7 COLLIER ON BANKRUPTCY ¶ 1104.04[1] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed.). *See also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 664 (Bankr. S.D.N.Y. 2006) ("Using section 105(a) to appoint a fiduciary to act as a trustee shorn of the name, but with few other substantive differences, would be the exact kind of wrongful judicial action that the Second Circuit has forbidden. Section 1104 already provides for two kinds of fiduciaries, trustees and examiners.").

8. The CRO Application cites no case authority as a basis to employ a CRO with full governing authority, but the Seventh Circuit did allow the appointment of a debtor representative that was not a chapter 11 trustee. *In re Gaslight Club, Inc.*, 782 F.2d 767 (7th Cir. 1986). The UST avers that the *Gaslight Club* ruling is problematic for multiple reasons:

> (1) *Gaslight Club* is distinguishable from this case because even the *Gaslight Club* court acknowledged that the facts were "peculiar" and that it "would certainly question recourse to the present procedure as a means generally to avoid appointment of a trustee." *Gaslight Club*, 782 F.2d at 772.

> (2) The *Gaslight Club* relied on § 105(a) as the statutory basis for its authority. *Gaslight Club*, 782 F.2d at 770. However, § 105(a) can only be used to carry out provisions of the Bankruptcy Code, and not to fasten new provisions onto the statute that Congress neither enacted or intended. Also, one of the fundamental principles of statutory interpretation dictates that general provisions in a statute such as § 105(a) may not be employed to override the requirements of more specific statutory sections such as § 1104(a).

> (3) The *Gaslight Club* court also relied on § 1107(a) as the statutory basis for its authority. Gaslight Club, 782 F.2d at 770. However, as with § 105(a), the UST avers the Court should not use § 1107 to displace more specific sections of the Code such as § 1104(a).

3

9. The UST avers that the CRO Application could leave the Debtor's current Board of Directors in place, and the CRO, while in charge of the day-to-day operations of the Debtors, could be subject to the ultimate control and supervision of the Board. The CRO, as an officer of the Debtor, would be subject to the ultimate control and supervision of the Board.

10. Section 1.04 of the MSA states that Trilogy shall act as "MGH's exclusive agent and representative" if any part of MGH should be sold through any sales process. If Trilogy requests to be the Debtor's exclusive sale broker, this request should be done by a separate retention application.

11. Upon information and belief, Article III of the MSA of the CRO Application governs Trilogy's proposed compensation. Section 3.01 states, "MGH will pay to Trilogy, in advance, the sum of $30,000 each month." Section 3.02 states, "MGH will pay to Trilogy a rate of $200 per hour for the services of the CFO." The Debtor provided no information on whether other potential restructuring companies were interviewed or consulted, and there is no explanation about whether Trilogy's proposed compensation is reasonable for the services to be rendered.

12. The CRO Application does not delineate what services the CRO will provide for the flat monthly fee and what services the CFO will provide at an hourly rate.

13. The UST objects as overly broad the Debtor's proposed payment of Section 3.03's "Affiliation Transaction Fee" to Trilogy if the Debtor has a change of control, change of ownership, sale or lease of the Debtor's assets, a merger or consolidation, or any similar acquisition agreement. The UST also objects to the provision that the Debtor's obligation to pay the Transaction Fee survives the termination of the Agreement between the Debtor and Trilogy.

14. Section 3.06 of the MSA outlines the Debtor's payment procedures to Trilogy while in bankruptcy. If Trilogy seeks to be paid via interim compensation procedures, this request should be done by a separate interim fee procedures motion.

15. Article IV of the MSA outlines the term and termination procedures of the agreement between the Debtor and Trilogy. Section 4.04 permits termination by Trilogy during the initial term of the Agreement (three years) upon thirty days' written notice to the Debtor. There appears to be no reciprocal option for termination by the Debtor. It appears the Debtor can only terminate the Agreement under Section 4.05, which permits either party to terminate after the third year of the Agreement.

16. The UST requests that the limitations on indemnification outlined in Section 5.18 of the MSA be included in any order if the Court approves the Debtor's retention of Trilogy.

17. Any Trilogy claim for indemnification should be subject to court approval.

18. Under Section 5.20 of the MSA, Trilogy outlined any potential conflicts. The UST requests any information as to whether the Debtor contacted companies other than Trilogy Revenue Cycle Solutions, LLC, to provide revenue cycle management services such as billing and collection functions. The UST reserves the right to raise any objection to any future Debtor motion for authority to assume its agreement with Trilogy Revenue Cycle Solutions, LLC.

19. Upon information and belief, the proposed CRO will be responsible only to the Court. If this occurs, the Debtor will no longer be a debtor-in-possession under these circumstances because the Debtor will lose all control over its assets and affairs. The proposed CRO will be a trustee in all but name. The proposal suggested by the CRO Application is not one supported by the Bankruptcy Code or case law.

20. If the Court does approve Trilogy's retention, the UST requests that any final and executed engagement agreement between Trilogy and the Debtor be attached to any order approving Trilogy's retention.

21. The UST reserves the right to bring additional objections at any hearing on this matter.

WHEREFORE, PREMISES CONSIDERED, the United States Trustee prays for an order denying the Debtor's application. The United States Trustee further prays for all general and equitable relief to which entitled.

RESPECTFULLY SUBMITTED, this the 25th day of September, 2018.

                                  DAVID W. ASBACH
                                Acting United States Trustee
                                Region 5, Judicial Districts
                                of Louisiana and Mississippi

                        By:   /s/Christopher J. Steiskal, Sr.
                                CHRISTOPHER J. STEISKAL, SR.

CHRISTOPHER J. STEISKAL, SR. (MSB #101654)
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE, REGION 5
501 EAST COURT STREET, SUITE 6-430
JACKSON, MISSISSIPPI 39201
TEL: (601) 965-5241
FAX: (601) 965-5226
EMAIL: christopher.j.steiskal@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading has been served this day on the below named individual(s) via first class U.S. Mail at the address listed below or by Notice of Electronic Filing via the email address on file with the Court's CM/ECF system:

Craig M. Geno

DATED, this the 25th day of September, 2018.

/s/Christopher J. Steiskal, Sr.
CHRISTOPHER J. STEISKAL, SR.